## COOS BANK *vs.* SAMUEL BROOKS.

When a debtor owns in land, set off under an extent, a less interest than that which was appraised and returned, all the interest, which he actually owned will pass to the creditor.

In our statute, giving a new execution where the "estate" extended did not belong to the judgment debtor, the word, "estate," means as well the quantity of interest in the land as the land itself; and a scire facias lies for a new execution for the difference in value between the "estate" set off, and the "estate" actually owned by the debtor, whether that difference arise from a total failure of title in any part of the land, or from a partial failure in the quantity of interest set off in the land.

THIS was a scire facias to obtain a new execution on a judgment, rendered between these parties, October term, 1810.

It was alleged, that the original execution had been levied in part on personal, and in part on real estate, then supposed to belong to the defendant; but that the title to a part of the real estate, which had been set off in fee simple, had altogether failed, and that the plaintiffs had since been evicted.

The defendant pleaded first, that the title to the real estate described, did, at the time of the extent, belong to him in fee simple; and secondly, that the plaintiffs had not since been evicted.

The issues thus tendered were joined, and at the trial here, November term, 1818, the following facts appeared in evidence.

Early as June 24th, 1797, the defendant executed a mortgage deed of that part of the real estate now in controversy, to *James Cutter* and *Jonathan Amory*, to secure the payment of $928 72 in three years; that, when the extent was made, there still remained due on the mortgage about $500; that the mortgage deed, though on record, was probably not known to the plaintiffs or the appraisers; that the land was estimated at its full value and set off in fee simple; that *David Webster*, the general agent of the plaintiffs in other concerns, but who in this instance acted on his private account, proceeded sometime after the extent, to purchase of *Cutter* and *Amory* their interest in the premises, and having entered and foreclosed the equity of redemption, released his title for a valuable consideration to the present plaintiffs.

On this evidence a verdict was taken by consent for the plaintiffs, for the sum at which this part of the real estate

thus extended was appraised, subject to be set aside or amended according to the future opinion of the court on the whole case.

*Bell*, counsel for the plaintiffs.

*Swan*, for the defendant.

WOODBURY, J. The plaintiffs contend, that, as the whole quantity of interest, set off by the appraisers in these premises, did not pass, nothing could pass under the extent; and consequently, that a new execution ought to issue for the whole sum at which the premises were valued.

But we are inclined to think, that a mis-description of the quantity of interest, actually owned by the debtor in the premises, if the error consist only in calling it too much, will not prevent such interest from passing as the debtor had. *Omne majus continet in se minus.*(1)

Thus, in all conveyances by deed, every interest owned in the premises, less than what is mentioned is held to pass.(2) For this reason, when a deed purports to be a fee simple in the premises, and the grantor owned only a copyhold interest, the damages, in an action on the covenants, will be " according to the difference in value between fee simple " land and copy-hold land."(3)

So, if the grantor had no interest whatever in a part of the premises, the conveyance operates as to the residue; and the recovery of damages on the covenants, will be limited to the value of that part, *Pothier No.* 99, 139.—*5 John.* 49, *Morris vs. Phelps.*—12 *do.* 126.—14 *do.* 89.—10 *Mass. Rep.* 459, *Leland vs. Stone.*—8 *do.* 243.—14 *do.* 407.

So as in the present case, if the interest of the grantor was reduced or incumbered by a mortgage, all the interest he actually has, will pass; and the grantee can obtain on his covenants only the amount of the incumbrance. 7 *John.* 173, 358, 371.—11 *do.* 477.—13 *do.* 105.—4 *Mass. Rep.* 156, 630.—12 *do.* 304.

If, in extents upon mortgaged estates, a different doctrine prevails in Massachusetts,(4) which is somewhat questionable, (14 *Mass. Rep.* 408, *Atkins vs. Bean.*—[16 *ditto* 401, *White vs. Bond.*]) it is probably grounded on the circum-

(1) 3 Maul. & Selw. 392, Isherwood vs. Oldknow.

(2) Perk. Con. sec 114.—13 John. 412.— 7 Cran. 35.— 14 Mass. Rep. 407.

(3) Noy 142, Gray vs. Poriscoe.

(4) 11 Mass. Rep. 226, Warren vs. Child.

stance, that an equity of redemption does not there as here pass by an extent, but by a sale at the post.

Under the circumstances of the present case, then, we hold, that the equity of redemption, which was owned by the debtor at the time of the extent, passed to the plaintiffs; and hence that they are entitled to recover only the difference between the value of that equity and of a fee simple in the premises.

But the defendant contends, that our statute of February 15th, A. D. 1791, under which this scire facias is brought, applies only to those cases, where the whole title to the whole land extended fails, or, at the farthest, where the whole title to some part of the land fails.

The provision of the statute is, " that when execution " shall be levied on any estate for the purposes of satisfying " such execution, and after the levying thereof it shall ap- " pear, that such estate levied upon did not, at the time of " the levying, belong to the debtor," then the creditor may, by scire facias, obtain a new execution.(1)

(1) 1 N. H.
Laws 183.

This language is certainly broad enough to countenance an idea, that to support a scire facias none of the estate levied upon must, at the time of the levy, have belonged to the debtor. And under the 32d Henry VIII. a new eligit could not issue, unless the whole title failed as to all the land extended.(2) But this construction was there founded on the circumstance, that the creditor, by the extent of an eligit, took only the income of the land for a term of years, and not the whole estate of the debtor in the land; and hence, if any part of the land belonged to the debtor, the creditor was empowered to receive the income of it so much longer as to satisfy all his debt. Or, in the words of Lord Coke, in *Fulwood's* case,(3) he " shall hold the residue of the " land over till the residue of the debt shall be satisfied."

(2) 2 Tidd 942.

(3) 4 Coke 66.

But as the creditor here, in the first instance, takes the whole interest of the debtor in the premises, the reason for the construction in England fails; and when a part of the land did not belong to the debtor, if the creditor could not have a new execution for the value of such part, he is re-

mediless. Such a case, therefore, being within the spirit and design of this statute, it has always been relieved under the statute.(1)

(1) 14 Mass. Rep. 407, Atkyns *vs.* Bean.

It is apparent, however, that the loss of a creditor may be as great, when a less interest in the premises than what is set off belonged to the debtor, as when a less quantity of land belonged to him. In the present case a fee simple was set off when only an equity of redemption belonged to the debtor; and without relief under this statute the creditor must lose the whole difference between them, which is the amount of the mortgage. It, therefore, is as much within the spirit of the statute as the case before mentioned; and the language used is equally applicable to either case. For the word "estate," the prominent term in the statute, sometimes signifies the interest in the premises, and sometimes the premises themselves. 2 *Bl. Com.* 103.—4 *Maul. & Selw.* 369, *Roe vs. Bacon.*—1 *N. H. Rep.* 166, *Fogg vs. Clark,* and *auths. there cited.*

And though from its connection in this statute it naturally refers to the premises themselves, yet, in law, it as often refers to the interest in the premises; and to enforce the spirit of a statute, so useful and necessary as this, the word "estate" may well enough be considered, as here intended, to comprehend both the interest and the premises.

Under this view of it, the " estate levied upon did not, at " the time of the levying, belong to the debtor," but a less estate; and consequently the plaintiffs are entitled to a new execution.

As an equity of redemption, however, passed under the extent, the new execution must issue for only the difference in value between a fee simple in the premises and this equity of redemption. The " estate" has failed only *pro tanto ;* and when the assignee of the mortgagees entered to foreclose, the plaintiffs ought to have availed themselves of the equity they had acquired, and to have redeemed the premises. All the facts would then be fully known; and if no understanding existed between them and the assignee, who was their general agent, and who after-

wards released to them, it was the folly or misfortune of the plaintiffs not to have exercised in due season such rights as they possessed.

After this amendment, let there be entered

*Judgment on the verdict.*